16-05-2008 Marriage of Juan A. Rivera and Melissa Sanchez Rivera All right. With the attorneys that are going to be arguing this morning, please step up and identify yourselves for the record. Good morning, Your Honor. Brian Schroeder from Schroeder, Cantwin, Fleck, appearing on behalf of Melissa Sanders Rivera, who is here in court also. Mr. Schroeder. Michael Berger of Berger Schatz on behalf of the appellee, Mr. Juan Rivera, who is also present. All right. Mr. Berger. Good morning to both of you. Each of you will have approximately 15 minutes to present your oral argument. From that, Mr. Schroeder, you may save up some time for rebuttal. All right? Thank you, Your Honor. All right. May it please the Court. Settlement proceeds from a wrongful conviction lawsuit are marital property when the condition is reversed during the marriage. This Court, accordingly, should answer the certified question in the affirmative. In the DeRosa case, the Ohio Supreme Court stated that a cause of action is marital property when that cause of action accrues during the marriage. There was also the holding of the Fifth District in the Drown case, which says essentially the same thing, that the date of accrual determines the classification of the property interest as being marital or non-marital. In the Heck case, the United States Supreme Court denied the existence of a wrongful conviction cause of action using those exact words and went on to hold that such a cause of action does not accrue until the conviction is reversed. In the Ferguson case, the Ohio Supreme Court said that a cause of action for malicious prosecution, likewise, does not accrue until the conviction is reversed. In the Centioli and Weinstein cases, this Court said that in order to be property within the scope of the act, the race at issue must be a present property interest rather than an expectancy interest. Based upon the Heck and Ferguson cases, because a wrongful conviction cause of action does not even exist and does not accrue until the conviction is reversed, until the reversal occurs, until such time as the reversal occurs, that cause of action is only an expectancy. It is the reversal of the conviction that makes that expectancy ripen into a present property interest. I tell the audience that that rule is basically just a procedural rule. And actually, the injury occurred, the action that was led to the cause of action occurred prior to the marriage. In this Heck case, that's just a procedural rule that must be satisfied. And therefore, since the injury occurred prior to the marriage, the respondent spent 20 years in jail, the property should be properly classified as non-marital. That is the position that one has taken. However, while Heck does have a basis for judicial economy concerns in saying that you cannot use a civil lawsuit as a means to collaterally challenge a conviction, the underlying premise, though, of it is, as Durosset and Centioli and Ferguson say, you have to look at the time the cause of action accrues. The rationale for why the Supreme Court in Heck said it accrues at the time of the conviction doesn't undermine its holding that the cause of action doesn't even exist before then. You can't argue a property interest in something that doesn't yet exist, which is what one is trying to do. And his theory, I would submit, collapses under its own weight, because what is the injury? The injury is not simply that he was coerced into confessing in 1992 and was convicted for the first time in 1993. It is that for 11 years of his marriage to Melissa, he was in prison. It is that his second conviction was affirmed during the marriage. It is that his third conviction, his third trial occurred during the marriage. His third conviction occurred during the marriage. In other words, his injury is not isolated and limited to events that only occurred in 1992 and 1993, which certainly are before they were married. His injuries span the entire course of their marriage until, of course, his release. So for all those reasons, the attempt to knock Heck down doesn't work. And further, Ferguson still stands, even if you want to say something about Heck. Ferguson, from our own Supreme Court, says that a malicious prosecution cause of action accrues upon the reversal of the conviction. Their brief doesn't mention Ferguson at all. There's no way to argue around what Ferguson says. Excuse me. Go ahead. You have to look at, again, what DeRosa says is you have to look at the day of accrual. What facts underline the drone case? That's another. Drones from the 5th District and then drone, the appellate court, there was a workers' comp case, and the appellate court said the date that the cause of action accrues determines the classification of property interest. And then they said generally a cause of action accrues when facts exist, which allows someone to bring a claim against another. And then they went on to say, well, in this case, in that case, the drone case, the person's injury cause of action accrued at the time of injury. Fine. But the point of drone is, again, you look at the date of accrual. Here, the date of accrual is in 2011 when the conviction was reversed. The facts is, as Mr. Burtwood no doubt is going to say, as they argued in their brief, is that DeRosa and drone do not deal with a situation where the injury and the accrual occurred on different dates. That's true factually, but that does not undermine the ruling, the rule of law that both cases stand for. The concept of accrual, as we set forth in our briefs, the hermitage case that the Supreme Court decided one year before DeRosa, it says usually a cause of action accrues at the time of injury. In drone, the appellate court said a cause of action accrues when facts exist, which allows you to sue another. In other words, both cases contemplate and embrace the notion that a cause of action can accrue after the date of injury. So this case here, Juan Rivera's case, Melissa Sanders' case, where we're talking about a cause of action that accrued after the first of many injuries, not just the first of a singular injury, falls within the scope of the definition that DeRosa sets out. So this is simply take DeRosa, apply it to the certified question, and you get your answer, which we submit should be a yes. Basically, that's our argument. Well, the trial court obviously didn't disagree. Well, you know, true, and that's why we have appellate courts. What were the reasons that she used? The trial court adopted or followed, so to speak, the language, or I'm sorry, the reasoning of the second district in the Indian Harbor case. The insurance defense case. The insurance defense case, yes, which involved the city of Waukegan and which obviously involved Juan's underlying lawsuit. Juan was on the parties in that case, and he argued to the second district and the trial court in that case that coverage was owed by the insurer for Waukegan at the time of his release in 2011 because his cause of action for malicious prosecution accrued in 2011 when he was exonerated. The second district said no because you look at the policy language to determine the duty to defend, and the court said you do not look at the elements of a malicious prosecution claim. We focus on the policy language. That opinion is replete with references to the policy language. The policy provided coverage for an injury, and an injury included malicious prosecution claims, and the second district said for purposes of defining and construing injury under this policy, we hold that the date of the initiation of a malicious prosecution triggers coverage. The certified question does not have anything to do with the policy in Indian Harbor. It has nothing to do with insurance coverage or the duty to defend generally. So the language in Indian Harbor where the court says we find it difficult, if not impossible, to equate an injury where the person is being exonerated and having their conviction reversed is an apposite because it's apples and oranges. They're talking about construing an insurance policy. In this case, this certified question concerns what is a settlement, as it says, what is marital property when a wrongful conviction cause of action accrues during the marriage? Is it marital or not? Again, that has no bearing on insurance coverage and policy language. That's the, and the circuit court cited Drone, but then in our opinion it misapplied Drone because, as I've said already, what Drone says, you look at the date of accrual to determine the classification. The court went on to say it actually cited that provision from Drone and then said, well, this is different because cause of action accrued after injury, and in that circumstance I'm going to treat it as if the injury occurred before the marriage. That was the court's rationale. So the court, in our opinion, again, cited Drone but did not follow it. The distinction, really what this case you could maybe even say comes down to is, is there a distinction between determining classifying property when accrual and injury are simultaneous and when injury and accrual are different dates? Is that accrual date always controlled? Isn't that your position? Yes, accrual should control because DeRosa says it should, and so does Drone, and so do the other cases. Well, cases have traditionally held that when the cause of action arises, would you say they're equatable, accrual, and when the cause of action arises? Yes, the law generally treats those terms as interchangeable. And that's generally when the courts have held that the determining factor is when the cause of action arises for determining whether there's property. Yes, but there's no cause of action here because Your position is that the cause of action arose when he was released from the penitentiary. I'm sorry. Or when his conviction was reversed because for a 1983 oral malicious prosecution, it is absolutely clear that the cause of action arises when there is a reversal of a conviction or a pardon or whatever that actually gives you the right to then sue for that cause of action.  Before then, you had no right to sue. And in our estimation, if you had no right to sue before, then you can't have a property interest in any right to sue because you don't have one. You know, I can't, I don't own a house if I haven't bought it yet. Yes. It's essentially the, you know, an analogy I would draw. Anything else you want to add at this time, Mr. Schroeder? We're certainly going to give you some time for rebuttal. Well, I will comment briefly. I'll do it two or three minutes on the secondary issue, or the alternative issue of the Settlement Judgment Motion. NCVAR's affidavits, I would just simply say the affidavits are conclusory. They are equivalent to the affidavit in Steiner where the affiant therein said that we are owed $50,000 for a property returned to the vendor for which we do not receive a credit. That's no different than Mr. Art's statement that the defamation claim had nothing to do with the settlement. The Nichols case that they cite, in that case we had 29 very detailed paragraphs from the affiant, and this court said the facts in the affidavit demonstrate that the affiant had personal knowledge of the facts he testified to. We're not questioning Steve Art's competency or first-hand knowledge of what went on during the settlement negotiations. What we're questioning is the fact that his affidavit nonetheless is conclusory, and you can't say, especially when you want to say the defamation claim was never discussed, you can't then argue that the defamation claim had no impact on the amount of the settlement. Furthermore, the settlement agreements conflict with the affidavit. That's an issue of fact that cannot be resolved on summary judgment. So in the event you were to answer the certified question no, we would ask that you still nonetheless rule that the affidavit should have been stricken and that the motion for partial summary judgment that one filed should have been denied. And I'll save the rest for rebuttal. Thank you. Thank you. Mr. Berger. Excuse me. Something that counsel neglected to say is that this is a case of first impression. Not only is it a case of first impression in the state of Illinois, but there's been no reported case similar to the factual situation presented here in any divorce case in the United States. You mean it's resulted in precedent. Exactly. Exactly. And in connection with the ruling in the lower court, the trial court, there was extensive briefing, which Your Honor has seen in both briefs, as well as argument on this issue. But for the uniqueness of this factual situation, we would be talking about the basic law of personal injuries. When did they come about? Before the marriage or after the marriage? This personal injury, the torturing of Mr. Rivera, which took place eight years before the marriage. But there's extensive case law, Mr. Berger, that says that it is not a cause of action until that conviction is reversed. The conviction is reversed during the marriage. Is that correct? The conviction was reversed during the marriage. But the cases that have been cited, Your Honor, relate to a situation where it was all together. It was simultaneous. It all happened at the same time. The injury and the cause of action happened at the exact same time. They used that language in Drone and the other tort cases simultaneously. Not simultaneously. They used them interchangeably, rather, as if it was the same. It's not the same. And the uniqueness of this situation is that he had no right to file at that time because of hack and hack. But did he even have a cause of action unless he's exonerated, unless there's a pardon? Does he ever have a cause of action unless and until there's an exoneration? Your Honor, if he wasn't exonerated, we wouldn't be here today. That's right. The question is really, for malicious prosecution, and in 1983, you cannot have the right to sue unless and until a court declares that your conviction was wrongful and reverses it or the governor pardons you and says you – or there's one other example. Your Honor, but that, as Justice Howell mentioned ago, is a procedural situation. It's a procedural situation. It should not deny the man his right. His property right existed at that time. He was injured at that time. Well, no. His injury actually occurs because he was wrongfully convicted. Yes. But based on – That's the essence at the end of the day. The injury actually occurs because that person was wrongfully convicted. However, Your Honor, that person in this situation was tortured and abused into the coerced confession. That is the underlying essence of how he was convicted on all three criminal trials as well as the civil lawsuit. It goes back to that. It goes back to the injury that was caused to him by way of his torture. But for the torture, there is no coerced confession. There is no conviction. There is no exoneration. There is no lawsuit, civil lawsuit, and none of us are here today on this issue. If we base the whole lawsuit, this case, on when did the injury occur, the respondent was married for 11 years while he was still in prison. So did he suffer injury during the marriage? Your Honor, as all other personal injury cases, and I could speak to Drone and the other ones that have been reported here and cited by Mr. Schroeder, once you're injured, it's a continuous injury. He's injured today. He's still suffering today. He'll suffer for the rest of his life. 20 years. Absolutely. But just like Drone, Drone suffered during the marriage, but his injury occurred before the marriage. Was that a workers' cop case or was that another? That was the workers' cop case. Yes. You know, in this case, let me ask you something else. There was testimony that this defamation had nothing to do with the settlement. Yes, ma'am. What was the actual claim of the defamation action? The actual claim, the facts of that were that a police officer and an assistant state's attorney, after Mr. Rivera was released from jail, said that he should have been released. He was still guilty. That was the defamation. Was it after the second or is this? No, this was after he was exonerated. Everything? Everything. All right. All right. That's between the two trials. That's between the two trials. All right. So go into that. I will. And Mr. Art's affidavit, which is based on personal knowledge, unlike the case, the Steiner case, where the court said it was utterly useless because he had the affidavit in that situation. He had no personal knowledge at all. And there's a quote, just completely disregard. Mr. Art was there throughout. But most importantly to your question. Okay. Well, I didn't ask my question. This is the defamation. And that actually occurred during the marriage. Yes. But, Your Honor, may I? Sure. Mr. Rivera is the post in connection with that. And he said he was happy about the quotes. It didn't bother him at all. He wasn't injured at all. He said, I'm happy that they said it. I could care less. How could you pursue an injury for defamation if you said it? I could care less. I was happy with it. Was it pending when the whole thing was settled? Yes, it was pending when it was all settled. But Mr. Art was involved from day one in connection with both. I'm just saying, I don't know how we could accept that affidavit as actually complying with 191 in terms of what it says, that the defamation counts had nothing to do with the Steiner case. Because, Your Honor, the deposition of Mr. Rivera was attached to the affidavit. And it set forth how he himself defeated any cause of action for defamation by his very testimony. You can't have defamation if you haven't been injured. He wasn't injured. He said he wasn't injured. He was happy about it. Therefore, how could you have any recovery for an injury when the defendant replanted himself to say, I could care less? Who brought the defamation action?  Who brought the cause of action? Well, Mr. Rivera brought the cause of action. However, Your Honor, the fact of the matter is, is he defeated it by his very own testimony in deposition. And Mr. Art, who represented him from the time of the beginning, before the lawsuit, through the lawsuit, and all the settlement negotiations, the concept of defamation was never ever discussed because it was a non-issue. Because Mr. Rivera had already destroyed or defeated the claim itself. Would you say that the trial judge here relied primarily on the duty to defend case in reaching her conclusions? I'm sorry. The duty to harbor. Do you think that that was really the basis for her decision? I mean, was there anything else that she was using to support her? I think she was. She did note that generally when the cause of action accrues, it's really the focal point for deciding whether something's progressed, didn't she? I think she focused, if I may, Your Honor, on the United States Supreme Court case of Heck. And that it wasn't Mr. Rivera's fault for not being able to file. It was out of his control that he was not able to file his lawsuit for the wrongful injury that he sustained eight years prior to the marriage. I think she believed that the Heck case denied him his otherwise rights to file. It was procedural. I mean, isn't that a little bit, I mean, it doesn't really make sense in the law in terms of what malicious prosecution has always been. I mean, there's nothing unusual about the statement of the U.S. Supreme Court in terms of when a cause of action arises, particularly when it's either a 1983 action or a malicious prosecution. There's nothing unusual about it. Your Honor, but you don't have that. You don't have that in connection with the Illinois Marriage and Disclusion and Marriage Act. Sure, but it's kind of a basic principle, though, that a cause of action amounts to the elements that are required. One of the elements that has always been required in a malicious prosecution is that there's an exoneration. But if you go back to Weinstein, and again, the cases that you're citing have nothing to do, respectively, with the IMDMA. If you go back to Weinstein, the case that he cited. Yeah, but cases that traditionally, in this arena, have always held that it's when the cause of action arises. Your Honor, if I may, the Weinstein, which was this Court's decision over 30 years ago, talked about a property right, a right tangible or intangible, which might, might occur. Might. That's the language of Weinstein. And this was might. He just didn't have the right to do it under heck. There has never been a case like this. This cause of action didn't even exist until the reversal. Otherwise, it is not, it didn't exist. His property right was there. He was injured long ago. But what about the U.S. Supreme Court that says the cause of action did not even exist? The only reason, from my perspective, that the Supreme Court said what it said was for judicial economy, just like they said, and because of a collateral attack on a conviction. It had nothing to do with the situation that we have here today. It, to me, is, Mr. Schor, the apples and oranges, this is not even the fruit family. I mean, if you're looking at what the INDMA is supposed to be, this is no different than any other tort case. This is a case of person's impression, as you say, and we like rules and guidelines, you know, for people to follow and live their lives. Isn't it more convenient for us to say, well, it is accrual? You don't have to look at all this injury. When did the person have a right to bring this suit? And that's how we're going to gauge marital property. However, if I may, Judge, however, everything that happened to Mr. Rivera was arbitrary, out of his control, other than the actual injury that he suffered. The time of his conviction, the exoneration, everything that came along the way was out of his control. The United States Supreme Court did not envision the, in my opinion, under hack, a situation like this to deny him a claim that he otherwise would have had. The problem I'm having with this case is I don't think you're actually describing the essence of a malicious prosecution action. I mean, you say that the injury is all related to the forced confession. There's no doubt a serious, serious injury that is long-lasting, and we don't question that at all. But the essence of what a malicious prosecution is, is that the injury, the essence of this action is that an innocent person was convicted. And that means... And until and unless the, somehow there's a recognition either by the court or executive branch of the government to say that this was a wrongful conviction. That's the essence of the action. However... So, I mean, I'm just saying. That's the essence of that particular action. However, it's not applicable to this. This is the action that comes before... Your Honor. ...the Domestic Relations Court. In Weinstein, the Illinois court defined property as a word of very broadest import, connoting any tangible or intangible raise, which might be made the subject of ownership. He owned his injury eight years before the marriage. Because of the technicalities raised in Heck, he couldn't pursue that until he was exonerated. His ownership, though, came before the marriage. His legal right to pursue it was denied because of Heck. The injury was... I don't think that that was denied. I think that the... It was delayed. No, I think there is no cause of action unless and until. You have to have an exoneration. You have to have someone declaring that this was a wrongful conviction. But under these circumstances, Judge, you still have to go back to the injury. The injury occurred. The injury occurred before the marriage. Because you don't have that same situation in Drone that the other cases cited, they're using these words interchangeably. There's a difference as it relates to this factual situation, the cause of the action, the accrual, and when it occurred. But without the injury, there's no cause of action to begin with. That's the... It's not the chicken or the egg. Because without the injury, it doesn't matter whether it accrues. What about the cases that say we have to decide that it's when the cause of action accrues that we... Of Illinois cases. There is no Illinois case that says per se what Your Honor is saying. In divorce, though, yes. And I hope that it won't be now. Because if you look at the Drone decision, Your Honor, for a premarital situation, they suggest that it doesn't matter when the case is filed. It doesn't matter. None of that is relevant. It matters when the injury occurred. Or accrues. I'm sorry? The cause of action accrued at that point. Again, Your Honor, it's because they use accrual in the same way as the cause of action. It's an injury. But they don't differentiate because there's never been a reason for them to differentiate before. There's never been a case like this. This case is so unique because of exactly what happened here. That without the injury, there's nothing. There's nothing. And the fact that he couldn't do anything about it... They're going to argue without the accrual, there's nothing. And that's the same thing. Yeah, what could he have done when he was injured eight years before? I'm sorry, Judge? What could he have done eight years before? You're saying he could have done something. What could he have done? Well, under heck, he couldn't have done anything, Judge. Okay? But what could he have done? Well, if he was injured in a normal, usual personal injury situation, he could have filed a lawsuit. But because he was wrongfully incarcerated, now, because it's adding further damage or injury to Mr. Rivera, because he couldn't do it, he was wrongfully convicted, so he couldn't file a lawsuit, now he finally gets out and he can file the lawsuit for the injury that he suffered eight years before the marriage? It's not this. Every case that stands for personal injury, Judge, it's when it occurred. This occurred eight years before the marriage. For every cause of action, you have to have the elements for that cause of action to exist. But, but, Your Honor, we're not interpreting it under a malicious prosecution standard. We're doing it under the Illinois marriage and dissolution of marriage standard. Sure. And the general rule was before that that it was when it occurred. I mean, Judge, if we take your thinking, at least what I'm hearing or the questions that you're giving to me, if you flip it over, let's assume that a man was convicted or a woman was convicted during a long-term marriage but was not exonerated until the day after they got divorced. Are we suggesting she had no cause of action? Of course she had a cause of action. She'd be reserving in her judgment or in her settlement or by court order. Is that really the case that's in front of us? No, but, Judge, it just shows you what the flip-flop would be. No, it doesn't. But anyway, I mean, this is a very interesting case, and it's a case of first impression. We all agree with that. Your Honor, and what I'm saying is that because of the uniqueness of this situation, the injury that occurred, it goes back to the concepts that were brought up by the Second District in the appellate court. I mean, it's time for remediation. It's time for the judicial system to provide remediation here, not to further his injuries. Well, we would find this is marital property. Does that mean there's a 50-50 split of the settlement proceeds? No, it doesn't mean it. And in most personal injury cases, the aggrieved receives significantly more than the spouse. However, if she wants to argue, as we've said in our brief, that she's entitled to some type of contribution for things that were done or caused during the marriage, then so be it. She can make that contribution argument, and Judge Bellows, the trial court judge, said, I'm not denying her the right to make an argument for contribution, but it's not marital. However, the injury occurred before the marriage. And to use the concepts of Drone and all of the other personal injury cases throughout the United States, including Illinois, it's the date of the injury. But for this, it's his. And one more thing, if I may, and one more thing, if I may, Judge, the statute provides for situations just like stock options that are not fully vested. The IMDMA provides for stock options that were acquired before or during the marriage that are not fully vested. There's a right there. It has nothing to do with anything other than before or after. As Your Honor is asking me, Judge House is asking me, if she wants to make a claim against it, there's law that allows for a contribution to a non-marital asset or a contribution to a marital asset. We're not suggesting she doesn't have that contribution right. But here, to suggest that this is marital property for an injury, a torture that took place eight years before the marriage, is incredulous to me. And it does not fit in the concept or the beliefs that have been set forth in the IMDMA or Weinstein. Because Weinstein talks about might into the future. It doesn't talk about that. It talks about tangible or intangible ways which might come into being in the future. It came into the future. And it was only delayed because of the Heck decision. It wasn't because of Mr. Rivera's fault. And with regard to the defamation situation, there was no defamation case. Once he testified and said, I could care less about what the officer said and the state's jury said. Somebody could give somebody damages for that? I don't think so. Mr. Ott knew so. He had personal knowledge of everything. And he said it was not taken into consideration. Because the analogy of Steiner is completely, that is apples and oranges. Because the evidence in that case, he had no personal knowledge. They brought in an outside expert to talk about elevators. He had no knowledge of anything related to the incident. If you look at the Nichols case and the alderman here in City Council, he had personal information. And we don't need 27 paragraphs or 50 paragraphs to say that I was his lawyer, I was his lawyer, and I dealt with everything throughout the case, and that the defamation situation was absolutely, had no value. Release doesn't equal value. Yes, it was a part of it, so there was a release. When people file a lawsuit or release claims, they release every claim, every claim under the sun, claims that weren't even mentioned per se in the lawsuit. So them holding their hat on a release, I don't think so, Judge. And it's not contrary. The release documents, which are just boilerplate release documents, do not contradict Mr. Ott's affidavit whatsoever. Was the deposition given before or after the petition for dissolution was filed? I think it was, I can't honestly tell you, Judge, but I believe it was done after, because I think that the lawsuit was filed in October of the year he was exonerated, and so I think, you know, before. But, again, what kind of defamation claim is there when two public officials say, well, he's still guilty? Wow. How about the torture? How about what happened to him eight years before the marriage? I mean, and I don't have to go into the specifics because it's part of the trial court record as well as in our brief. It had no value. And we're asking your Honor to affirm, to affirm Judge Bellow's decision and award Mr. Levera's civil lawsuit proceeds to him as his non-marital property, reserving any rights he may have to contribution. All right. Thank you. Thank you, Judge. Mr. Elder, brief reply. I'll do my best to be brief. I'll try and spend no more than one minute on the defamation issue. On page 199 of the record, that's the defamation count of one's federal lawsuit. It alleges the defamatory statements were published in November of 2011. His conviction was reversed in December of 2011. So he made the claim and the statements occurred before he was exonerated. Justice McBride, you said that you have seen no reason or to paraphrase you said you saw no reason how you could accept Mr. Levera's affidavit. That's music to my ears, so I won't go too much further. But the part about our – In terms of whether it complies with the rule and – Correct. Correct. The big issue here is I don't think the defamation. It's whether or not we're going to affirm the ruling because we think the case law supports what the judge did or whether, you know, we accept your position that only when the cause of action arose is there a property interest. Mr. Berger says that the property interest existed before that. And so I only mentioned the defamation in passing. Why don't you – Correct. And I'll move on. First of all, Mr. Berger said that there was no reason for the drone court and I think by implication the DeRosa court to differentiate between the date of injury and the date of accrual. Again, as I said, the concept of accrual contemplates that injury and accrual can occur at different times. I don't think – sorry. The drone court and the O.S. Krinker and DeRosa, and in fact I would submit any court, is going to understand that accrual is a term of art and has a meaning that is separate and distinct from injury. So to use the word accrual and to say a cause of action accrues, that date determines when it's mere property or not, means exactly that. And there's no disdifferentiation argument. It doesn't hold water. Why don't you – The sentence, as I said in our reply brief and in our initial brief, the next sentence in Weinstein says, and in fact the same quote is in Centioli, in order to be property within the M.O.D. Act, the I.M.D.M.A., however, the raise must be in the nature of a present property interest rather than a mere expectancy interest. Mr. Berger gave you half the story. That sentence he quoted about anything that might happen in the future is qualified by the next statement in Goldstein, Weinstein and Centioli that says it must be a present property interest. You can't have a present property interest in a wrongful cause of action when it does not exist. Whatever injury Mr. Rivera suffered when he was coerced into confessing in 1992, in and of itself did not give him a wrongful conviction cause of action. It was when his conviction was reversed. It was after he was tried three times. It was after he served in prison for 11 years during his marriage to Melissa. It was when his second conviction was affirmed during his marriage to Melissa. It is when he was tried for the third time during his marriage to Melissa. It is when his third conviction was entered during his marriage to Melissa. And it is when he served more time in prison after his third conviction and until it was reversed. That's the spectrum of injuries. It is not simply relating back to 1992 and 1993. Assault and battery for being coerced into confessing would be eliminated in 1992, but that's not what a wrongful conviction cause of action is about. It's not a malicious prosecution. It's not a 1983 claim. It looks at everything. This was a spectrum of injuries that occurred, the majority of them, during the marriage. He was in prison for 11 years during the marriage, 18 years total. He was in prison the majority of the time while he was married to Melissa. Well, let's talk about that. Do you think Mr. Berger is suggesting that the 20 years that he spent in prison was not part of the injury? No, of course it's part of the injury. The cause of action compensates him for the injury, but the cause of action is how he gets a recovery for his underlying injury. Until his conviction was reversed in the eyes of the law, he had no injury. Mr. Berger wants you to retroactively say even though his conviction was not reversed until 2011, all along he had this right to sue. How do you isolate this one injury from the 20 years that he spent in prison? Is that something that isn't part of this injury? It will be isolated, so to speak, when the court considers the equitable distribution of this property, provided you answer the certified question in the affirmative. Well, it is rather a unique case, isn't it? Because this really isn't an injury that occurred just on one day, did it? No, not at all. It actually spanned some 20 years, didn't it? Yes, it did. Eleven of those 20 years, the parties were married, weren't they? Yes, but it does not relate solely back to the cause of action and solely back to the first trial. This is an injury that I don't think can be divined by saying it is isolated and whatever happened from 1992, everything else springs. No, I certainly agree with that position. I'm just saying that the facts clearly show that this was not an isolated injury that occurred on one day because of a forced confession. There was multiple injuries that spanned 20 years. The issue, though, is was it marital property? It is, and I would suggest. And it became if it ever did. We haven't decided this case. That's why we invited you both here to argue. And I'm happy to be here. But it is marital property, and all those issues you just mentioned, and of course he was injured over 20 years, no one's denying that. But that issue, what to do about it, how do we decide what injury was the first year worse than the last or whatever, that all will be sorted out, as DeRosset says and as the Thomas case says, and I quoted in our reply, at the time of the equitable distribution phase of this proceeding. Right now we're at simply classification. No one's saying anything other than is it marital or not. As DeRosset said, Section 503 allows the court to consider a host of statutory factors and any other factors that are relevant based on the facts of the particular case. Was he convicted a second time while they were married? No, the second conviction occurred before the marriage. The second district affirmed the second conviction during the marriage. Yes. That's how it happened. But all these other issues about the uniqueness of the case and when was this injury and all that will be dealt with at the equitable distribution phase. Well, this is an ongoing injury that was taking place over the span of 20 years. There's absolutely no question about that. This is not an injury that occurred at one moment and then disappeared. It was an ongoing injury for approximately 20 years. Yes, and I understand. I don't know how you split the baby. I guess that's what I'm saying. Well, with an obviously innocent man. I'm not sure that the cause of action arose at one moment and it was over and then the damages result from that one moment. Or actually, if we're talking about 20 years of injury. One's an innocent man. Obviously, I'm here not to say anything bad about him. This thought occurs to me that I don't know how we say that this injury occurred at a moment in time before the marriage. And that's part of the actual cause of action. Well, yes. There has to be damages. What are they? Are they just from the forced confession or do they span 20 years for the incarceration? The damages are not limited just to what he suffered for being coerced into confessing. The legal argument, the so-called, I think as Justice Howell said, I wouldn't call it easy way out. I would say that the way out that DeRosa teaches is you use the date of accrual. We'll classify it and then we'll worry about what to do after that at the equitable distribution phase. So in that sense, this is bad in these cases. Well, that's right. The date of accrual, is the date of accrual some kind of injury we're going to parse or is it the actual entirety of the injuries which occurred over a span of 20 years? It's the entirety of the injuries. The cause of action accrues on a date certain, but the injuries for which you seek recovery through that cause of action can span, obviously, not just that single day. For example, I think it was December 15th of 2011 that the conviction was reversed. No one's going to say his injuries are limited to that day or that day until he got released, but that's when he can sue and say, hey, everything that happened to me is now wrong and I can't get my life back. All I can get is many tort lawyers say every day in the daily center. I'd give it all back to have it never happen, but since that can't happen, I can't go back in time, all I can get is a money recovery, so I'm going to go for that now. That's what this is about. The fact that the cause of action accrued on a date certain has no bearing on how you, I mean, it determines how you classify the property interest, but it allows one to recover injuries for whatever injuries he suffered as a result of his wrongful conviction. That's different, and that's something that again should be dealt with at equitable distribution, not at property classification. All right. That being said, we would again ask that you answer the certified question in the affirmative, and thank you for your time. All right. Mr. Broder, thank you so much for your arguments today. The case was very well argued, very well briefed, and we will take it under advisement.